IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


S. M. JOHNSON,

                    Plaintiff,                              Civil No. 3:11-00254-PK

               v.                                      **FINDINGS AND**
**RECOMMENDATION**

MICHAEL J. ASTRUE,

                    Defendant.


PAPAK, Magistrate Judge:

      Plaintiff S. M. Johnson ("Johnson"), a minor, seeks judicial review of the Social Security

Commissioner's final decision denying his application for Supplemental Security Income ("SSI")

payments under Title XVI of the Social Security Act. 42 U.S.C. §§ 1381-83f. I have jurisdiction

under 42 U.S.C. § 405(g). The Commissioner's decision should be affirmed.

1 - FINDINGS AND RECOMMENDATION

## BACKGROUND

Born in 1992 (Tr. 84), Johnson alleges disability due to a seizure disorder (Tr. 109) since January 1, 2001. Tr. 84. The Commissioner denied Johnson's application initially and upon reconsideration (Tr. 45-51, 53-55), and an Administrative Law Judge ("ALJ") held a hearing on December 10, 2009. Tr. 32-44. The ALJ found Johnson not disabled on January 11, 2010. Tr. 15-26. The Appeals Council accepted additional evidence into the record, but denied review of the matter on January 29, 2011. Tr. 1-4.

Johnson was eight years old at his alleged onset date, and seventeen years old at the time of his hearing before the ALJ. Tr. 35.

## DISABILITY ANALYSIS

In construing initial disability determinations for children under Title XVI, the Commissioner engages in a three-step sequential process. 20 C.F.R. § 416.924(a). First, the ALJ determines if the child is performing substantial gainful activity. If he is, the child is not disabled. 20 C.F.R. § 416.924(b). Next, the ALJ determines if the child has an impairment or combination of impairments that are "severe" under the Commissioner's regulations. If the child does not have such a severe impairment, he is not disabled. 20 C.F.R. § 416.924(c). Finally, the ALJ determines whether the severe impairment "meets, medically equals, or functionally equals" a "listing" in the Commissioner's regulations. 20 C.F.R. § 416.924(d). If the impairment meets or functionally equals a listed impairment, the child is disabled. *Id.*

## THE ALJ'S FINDINGS

The ALJ found Johnson's seizure disorder "severe," and found that he did not have any impairments or combination of impairments that met the Commissioner's Listings. Tr. 18. The ALJ

2 - FINDINGS AND RECOMMENDATION

subsequently found that Johnson's impairment or combination of impairments did not "functionally equal" the Listings, and consequently found Johnson not disabled. Tr. 18-26.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray*, 554 F.3d at 1222 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court, however, may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). This court, however, may not affirm the ALJ's findings based upon reasoning the ALJ did not express. *Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332 US 194, 196 (1947)); *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (citing same).

## DISCUSSION

Johnson first states that the "only issue is whether the ALJ erred in determining that the claimant does not have an impairment or combination of impairments that functionally equals a

listing." Pl.'s Opening Br. 11.  However, Johnson subsequently asserts that the ALJ did not properly rely upon his own testimony and that of his mother (*Id.* at 12, 17, 19, 20-22, 24-25), and that the ALJ should have developed the record regarding Johnson's testimony (*id.* at 18), and the medical record. *Id.* at 13-14.  He argues that the ALJ erroneously evaluated his seizure disorder under both Listing 111.02, which address "major motor seizure disorder," and Listing 111.03, which addresses "nonconvulsive epilepsy." Pl.'s Opening Br. 11, 12.  Johnson's arguments pertaining to the Listings arguments are concurrently addressed.

I.      **Credibility**

Johnson asserts throughout his briefing that his own testimony supports a finding that he is disabled.  Pl.'s Opening Br. 12, 17, 19, 20-22, 24-25.

A.      **Credibility Standards**

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a).  Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter,* 504 F.3d at 1036 (*citing Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (*citing Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*)).  The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third

parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284.

The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing the claimant's inconsistent statements regarding symptoms. *Id.* The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### B.    Analysis

Johnson testified that he has seizures "a couple times a month, about seven times a month," lasting four to five minutes. Tr. 37. The ALJ noted this testimony, and found that Johnson's statements regarding the "intensity, duration and limiting effects of these symptoms are not entirely credible." Tr. 19. The ALJ based this finding upon the medical record, noting that Johnson's treating pediatric neurologist, Parvez Pohowalla, M.D., stated that Johnson has "a few seizures every year, " and that Cynthia Nottingham, R.N., stated that he has nine seizures per year. Tr. 20. The ALJ's analysis later cited Johnson's activities of daily living, including bowling, camping, playing saxophone in the school band, playing basketball with friends, and having a girlfriend. Tr. 23.

### 1.    Medical Record

The record supports the ALJ's finding that Johnson's medical record does not support Johnson's testimony that he experienced seven seizures per month. The record contains Dr. Pohowalla's treatment notes pertaining to the period between February 27, 2001, and December 7, 2007. During this time Dr. Pohowalla noted Johnson's reported seizures on approximately eight occasions. Tr. 300, 309, 336, 343, 346, 344, 348, 350. On December 12, 2007, and February 13, 2008, Dr. Pohowalla completed questionnaires for Johnson's attorney. Tr. 368-70; 378-83. As quoted by the ALJ, Dr. Pohawalla wrote that Johnson has "a few" seizures per year. Tr. 379.

Cynthia Nottingham, R.N., who worked in Dr. Pohowalla's office stated that Johnson had "at least nine" seizures in the past year. Tr. 369. The record contains additional emergency room reports showing seizures experienced on five occasions between February 1, 2001, and April 8, 2008. Tr. 309, 392, 417, 426, 446. Notably, three of Johnson's visits to Dr. Pohowalla represent follow-up to his Emergency Room visits, and do not note additional seizures. Tr. 300, 348, 350.

Johnson now argues that he did not "report every instance of a seizure" and that this is "common with patients with seizure disorder." Pl.'s Opening Br. 12. Johnson provides no citation for this assertion. He also asserts, again without citation, that the ALJ's finding that he did not report his seizures is not a "clear and convincing" reason to reject his symptom testimony.

While it is conceivable that Johnson might not visit a physician in association with every seizure, this assertion fails to explain why Johnson did not report past seizures to his physicians when he visited them. The record shows that in February 2003, Johnson told Dr. Pohowalla he could not remember the date of his last seizure, which his grandmother thought was in February 2001. Tr. 352. In August 2004, Dr. Pohowalla noted that Johnson was seen in the Emergency Room for a seizure one month earlier, in July 2004, but had no seizures since then. Tr. 350. In November 2005, Dr. Pohowalla noted that Johnson's last reported seizure was in November 2004. Tr. 346. In September 2006, Dr. Pohowalla noted that Johnson had two grand mal seizures in August 2006, and none since then. Tr. 344. In November 2006, Dr. Pohowalla noted Johnson's report of a seizure the previous week. Tr. 343. In May 2007, Dr. Pohowalla noted Johnson's report that his last seizure was in January 2007. Tr. 342. This record does not suggest that Johnson had more than ten times the seizures he regularly reported. Johnson's argument that he did not report seizures now

constituting a disability is therefore unpersuasive.

### 2.    Activities of Daily Living

The ALJ's analysis also cited Johnson's activities of daily living, including his active social life, and "activities such as bowling, camping, and playing saxophone with the school band." Tr. 23. The ALJ may cite a claimant's activities of daily living. *Smolen*, 80 F.3d at 1284. Johnson does not challenge the ALJ's citation to these activities, and it therefore should be affirmed.

### C.    Credibility Conclusion

In totality, this evidence contradicts Johnson's testimony that he experiences seven seizures per month. The ALJ's reasoning regarding Johnson's testimony is based upon the record and the appropriate legal standards, and should be affirmed.

## II.    Lay Testimony

Johnson also asserts that the ALJ should have credited the testimony of his mother, Angela Harrison. Pl.'s Opening Br. 17, 19, 20-21, 24-25. He does not articulate specific error in the ALJ's analysis of Ms. Harrison's testimony.

### A.    Lay Testimony: Standards

The ALJ has a duty to consider lay witness testimony.   20 C.F.R. §§ 416.913(d), 416.945(a)(3); *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2008).  Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting his testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

///

7 - FINDINGS AND RECOMMENDATION

**B.    Analysis**

Ms. Harrison testified that Johnson experiences "about 40 maybe or even more" seizures in the past calendar year. Tr. 40. The ALJ cited this testimony, and concluded:

> Ms. Harrison's statements are considered credible to the extent reports of what has been seen and heard are accurate. While that is credible, behavior exhibited or symptoms reported by a subject are not an adequate basis to establish disability. Rather, there is more reliable medical evidence from examining medical professionals who have the expertise to evaluate the impact of the claimant's impairments on functional capacity. Tr. 20.

The ALJ went on to describe the medical evidence showing that Johnson's seizures occurred "far less frequently" than the forty times per year described by Ms. Harrison. Tr. 20.

The ALJ may reject lay testimony that directly conflicts, or is inconsistent with, the medical evidence. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). The ALJ may not, however, reject lay testimony merely because it is uncorroborated, or unsupported, by the medical evidence. *Bruce*, 557 F.3d at 1116. The ALJ found that, contrary to Ms. Harrison's testimony, the medical record did not show that Johnson experienced forty seizures per year. Tr. 20. This finding is based upon the record, as discussed above. *Supra*, 6-7. The ALJ's conclusion pertaining to Ms. Harrison's testimony is therefore based upon the record and the appropriate legal standard, and should therefore be affirmed.

**III.    The ALJ's Duty to Develop the Record**

Johnson argues that the ALJ should have developed the record regarding his own testimony (Pl.'s Opening Br. 18), as well as his alleged headaches, alleged learning disorder (*id.* at 14), and alleged hyperactivity attention deficit disorder ("ADHD"). *Id.* at 13.

The ALJ has a duty to develop the record when the claimant's onset date is ambiguous,

*Armstrong v. Comm'r*, 160 F.3d 587, 590 (9th Cir. 1998), or when the record is too inadequate for the Commissioner to make a proper disability determination. 20 C.F.R. § 416.913(e); *Bayliss*, 427 F.3d at 1217.

Johnson may not now raise an argument before this court not raised before the Appeals Council. *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). Johnson, who was represented by counsel, did not allege a learning disorder or ADHD before the ALJ (Tr. 36) or in his submission to the Appeals Council. Tr. 11. Neither Johnson, nor his mother offered testimony that such impairments effect his functionality. Tr. 34-44. Johnson's therefore waived arguments pertaining to these alleged impairments, and this argument should now be rejected for this reason.

Regardless of Johnson's waiver of the argument, a review of the record shows no ambiguity regarding Johnson's receipt of special education services. Johnson's special education records pertain to limited periods in 2000 (Tr. 259), 2002 (Tr. 273-84), 2005 (Tr. 123) and Johnson's ninth grade year of high school in 2006-2007. Tr. 117-22, 124-36, 138-66. In October 2009 Johnson enrolled in a "modified high school diploma" program to graduate from high school. Tr. 233-35. These records show that a comprehensive assessment was requested on January 18, 2002 (Tr. 273-77), but show no further evidence of a learning disorder or ADHD diagnosis. The record instead repeatedly shows that Johnson received special education because of his seizure disorder, rather than a learning disorder or ADHD. Tr. 220-21, 262. This record is neither ambiguous nor inadequate, and the ALJ therefore did not error in failing to develop it.

## IV.   Non-Severe Impairments

Johnson also asserts that the ALJ improperly considered his headaches in finding that he did not functionally equal a listing. Pl.'s Opening Br. 14. The Commissioner responds that Johnson did

not establish any medically-determinable impairments other than his seizure disorder and that, therefore, the ALJ did not error in omitting such impairments from his analysis. Def.'s Br. 9.

The ALJ must consider non-severe impairments in evaluating a child's disability claim. 20 C.F.R. § 416.926a(a). Johnson presently cites to the regulations regarding an adult claimant's residual functional capacity determination. Pl.'s Opening Br. 14 (citing 20 C.F.R. §§ 404.1545(e), 404.945(e)). The regulations pertaining to children do not contemplate an RFC analysis. 20 C.F.R. § 416.926a. Johnson's citations are therefore inapplicable.

A child's impairment is not "severe" under the Commissioner's regulations if it is a "slight abnormality or a combination of slight abnormalities that cause no more than minimal functional limitations." 20 C.F.R. § 416.924(c). The medical record shows that in 2005, at age twelve, Johnson reported headaches to Dr. Pohowalla. Tr. 347. Dr. Pohowalla stated they were "generally related to not eating properly or excessive physical activity." *Id.* Johnson did not allege that his headaches interfered with his functional activities prior to his hearing before the ALJ. Though Johnson's attorney submitted a questionnaire showing that Johnson reported one or more headaches per month, lasting four to five hours, Tr. 190-92, Johnson does not establish "headache" as a medically separate impairment from his seizure disorder requiring separate analysis in the ALJ's findings. Johnson's argument that the ALJ improperly assessed his headaches should therefore be rejected.

## V.    The ALJ's Step Three Findings

Finally, Johnson challenges the ALJ's finding that he did not functionally equal a listed disorder at step three in the sequential analysis of childhood disability.

A.    **Step Three Functional Equivalence Standards**

In determining childhood disability, the Commissioner finally determines whether the child's impairment "functionally" equals a Listed disorder. 20 C.F.R. § 416.926a(d). Children under age eighteen "functionally equal" a listing when they have two "marked" or one "extreme" impairment in one of six functional areas. *Id.* The functional domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well being. *Id.* The Commissioner's regulations specify criteria for each. 20 C.F.R. § 416.926a(g-l).

In evaluating a child's functioning under these domains, the Commissioner engages in a "whole child" analysis. Social Security Ruling ("SSR") 09-1p, "Title XVI: Determining Childhood Disability Under the Functional Equivalence Rule - The 'Whole Child' Approach," *available at* 2009 WL 396031. To determine if a child's limitations are "marked" or "extreme," the Commissioner uses "a picture constructed of the child's functioning in each domain." Id. at *7. The rating is based upon (1) how many of a child's activities are limited; (2) the importance of the limited activities to the child's age-appropriate functioning; (3) how frequently the activities occur and how frequently they are limited; (4) where the limitations occur; and (5) what factors are involved in the limited activities, including support from another person, medication, and support provided by a structured setting. *Id.* No set formula dictates these considerations in each case. *Id.*

B.    **Analysis**

Johnson challenges the ALJ's analysis in five of the six domains. Pl.'s Opening Br. 14-24. The regulations describe a child's ability to acquire and use information at specified age intervals.

20 C.F.R. § 416.926a(g); SSR 09-3p.  The ALJ found that Johnson was an adolescent on the date

he filed his application and at the date of his hearing, and therefore evaluated him as such.  Tr. 18.

Johnson does not challenge this finding, and his functioning at other ages will not be discussed.

### 1.  Acquiring and using information

The regulations instruct that adolescents, age twelve to eighteen, should be able to

demonstrate what they have learned in classrooms, and "use what you have learned in daily living

situations without assistance (e.g., going to the store, using the library and using public

transportation)."  20 C.F.R. § 416.926a(g)(v).  Further, adolescents "should be able to comprehend

and express both simple and complex ideas (vocabulary and grammar) in learning and daily living

situations . . . ."  *Id.*  They should also learn to apply these skills in practical ways.  *Id.*  This domain

includes "more than just assessments of cognitive ability as measured by intelligence tests, academic

achievement instruments, or grades in school."  SSR 09-3p, "Title XVI: Determining Childhood

Disability - the Functional Equivalence Domain of 'Acquiring and Using Information,'" available

at 2009 WL 396025 at *2.

The ALJ discussed a February 14, 2008, questionnaire submitted by Johnson's special

education teacher, Shari Chinchen, in response to questions from Johnson's attorney, which

indicated "marked" limitations in Johnson's ability to learn, speak, question, appropriately socialize,

and take care of himself.  Tr. 21.  The ALJ found this report contradicted by Ms. Chinchen's

assistance in formulating Johnson's October 29, 2009 Individualized Education Program plan.  *Id.*

(citing Tr. 221).  This report showed that Johnson maintained a 2.02 cumulative grade point average

and completed classes with assistance from special education instructors.  Tr. 221.  The ALJ

concluded that Johnson had "less than marked" limitation in acquiring and using information. Tr. 21.

Johnson now asserts that the ALJ failed to consider his academic scores and difficulty in math. Pl.'s Opening Br. 16. The Commissioner responds by reiterating the ALJ's findings.

The limited record before this court shows that Johnson maintained received 1.08 grade point average on one occasion in the ninth grade in 2007 (Tr. 158), and  Johnson's mother received a notice regarding this grade point average. Tr. 161. The record contains no other report cards, and this limited evidence does not contradict the ALJ's finding that Johnson maintained a 2.02 grade point average in 2009.

The record also shows that Johnson received special help in math (Tr. 124, 138-40, 147-48, 228, 287), writing (Tr. 124, 226, 228, 263, 280, 282, 287) and reading. Tr. 280. The Commissioner may consider such help in determining whether an adolescent is impaired in the "acquiring and using information" domain. SSR 09-2p, available at 2009 WL 396025 at *3. Johnson states that he is "simply unable to acquire and use information learned at the same pace as other children his age who do not have medical or mental health impairments, without accommodation." Pl.'s Opening Br. 16. While the ALJ must compare the claimant's progress to that of an unimpaired child's expected development, 20 C.F.R. § 416.926a(b), Johnson does not show that his academic progress is related to his seizure disorder.  The ALJ's finding that Johnson's scheduled high school graduation supported a finding that he did not have a "marked" impairment in acquiring and using information should therefore be affirmed.

///

2.      **Attending and completing tasks**

This "domain" addresses a child's ability to focus and maintain concentration.  20 C.F.R. §

416.926a(h).  Adolescents should specifically be able to "pay attention to increasingly longer

presentations and discussions, maintain your concentration while reading textbooks, and

independently plan and complete academic projects."   20 C.F.R. § 416.926a(h)(v).  Further, "in

anticipation of entering the workplace, you should be able to maintain your attention on a task for

extended periods of time, and not be unduly disrupted by your peers or unduly distracting to them

in a school or work setting." *Id.*

The ALJ again cited Johnson's Individualized Education Plan, which indicated that Johnson

"often needs additional time to complete assignments, and that his teachers should make sure he

understands directions for assigned work." Tr. 22.  The ALJ also cited Dr. Pohowalla's report that

"the claimant had seizures while playing video games and while doing his homework," and

concluded that Johnson's ability to play video games "shows that the claimant can sustain his

concentration over a period of time." *Id.*  The ALJ made no further findings pertaining to this

domain.

Johnson asserts that his mother's testimony contradicts the ALJ's finding that he can

complete tasks. Pl.'s Opening Br. 18.  The ALJ properly rejected that testimony for the reasons

articulated above, *supra*, 8, and Johnson therefore fails to establish error.  Johnson also asserts that

he "may have" ADHD, which would effect his ability to perform tasks. Pl.'s Opening Br. 18.  As

noted, Johnson failed to produce evidence regarding an alleged ADHD impairment, and this

argument also fails.  Finally, Johnson asserts that the ALJ should have developed his own testimony

regarding his activities of daily living, including playing video games and his concentration. *Id.* As discussed, Johnson, who was represented by counsel, did not present evidence that his concentration was curtailed at his hearing before the ALJ (Tr. 36) or to the Appeals Council. Tr. 11. Johnson cannot now assert this argument. *Meanel*, 172 F.3d at 1115.

Finally, the court notes that when an ALJ provides a reasonable interpretation of a claimant's activities, though other interpretations may arise, this court must affirm the ALJ's findings. *Rollins v. Massinari*, 261 F.3d 853, 857 (9th Cir. 2001). The Commissioner states that a teenager may be expected to "play a game or stay on task for an hour." SSR 09-4p, "Title XVI: Determining Childhood Disability - the Functional Equivalence Domain of 'Attending and Completing Tasks,'" available at 2009 WL 396033 at *6. The ALJ's finding that Johnson could maintain concentration to play video games should therefore be affirmed.

In summary, Johnson fails to establish error in the ALJ's findings regarding his ability to attend to and complete tasks.

### 3.    Interacting and relating with others

The Commissioner's regulations instruct that the ALJ must consider a child's ability to "initiate and sustain emotional connections with others," use the language of his community, cooperate with others, respond to criticism, and respect and take care of others' possessions. 20 C.F.R. § 416.926a(i). Adolescents in particular should "be able to initiate and develop friendships" with children of the same age, and relate appropriately to other children and adults. 20 C.F.R. § 416.926a(i)(v). They should be able to "recognize different social rules" for their friends and other acquaintances or adults, and intelligibly express their feelings, ask for assistance in getting their

needs met, seek information, describe events, and tell stories in a variety of environments. *Id.*

The ALJ found that Johnson is "active socially and enjoys activities such as bowling, camping, and playing saxophone with the school band." Tr. 23. He also noted the report of Daniel Rosenberg, M.D., which stated that Johnson had a girlfriend and played basketball with friends. Tr. 23. The ALJ concluded that Johnson is not limited in interacting with others. *Id.* Johnson does not challenge this finding and it should therefore be affirmed.

### 4.    Moving about and manipulating objects

This domain requires that a child be able to push, pull, lift, and carry objects, and perform associated movements. 20 C.F.R. § 416.926a(j). An adolescent should be able to participate in a range of individual and group physical fitness activities. 20 C.F.R. § 416.926a(j)(v); SSR 09-6p, "Title XVI: Determining Childhood Disability - the Functional Equivalence Domain of 'Moving About and Manipulating Objects,'" *available at* 2009 WL 396028. The ALJ found that Johnson had no limitations in manipulating and moving objects, stating that the medical evidence and school records show no such limitations. Tr. 24.

Johnson first cites his own testimony that he returns home after school and does little in challenging the ALJ's finding that he could move and manipulate objects. Pl.'s Opening Br. 19. The medical and school record show that Johnson participated in weight-lifting physical education classes (Tr. 159, 160, 164), played basketball, and played the saxophone. Tr. 319, 342, 344. This court must defer to the ALJ's interpretation of a claimant's activities. *Rollins*, 261 F.3d at 857. The ALJ's finding regarding Johnson's medical and school records and his ability to lift and carry objects should be affirmed.

Johnson also cites Dr. Pohowalla's 2006 note that Johnson should be supervised while swimming at age fourteen. *Id.* (citing Tr. 343). The Commissioner's regulations do not indicate that "supervision" detracts from an adolescent's ability to "move about and manipulate objects." . 20 C.F.R. § 416.926a(j)(v);SSR 09-6p, *available at* 2009 WL 396028. Johnson therefore fails to establish that Dr. Pohowalla's 2006 note recommending that he be supervised while swimming detracts from the ALJ's findings. The ALJ's findings on the matter should therefore be affirmed.

### 5.    Caring for yourself

Here the Commissioner considers how well a child maintains a "healthy emotional and physical state," including how he gets his physical and emotional wants and needs met, and how he copes with stress and environmental changes. 20 C.F.R. § 416.926a(k). Adolescents should "feel more independent from others," and "be increasingly independent in all of your day-to-day activities." 20 C.F.R. § 416.926a(k)(v).

The ALJ noted Ms. Harrison's testimony that Johnson needed reminders to bathe and take his medication, but found this contradicted by Johnson's own report that he "plans to become self-sufficient regarding chores, shopping, and medication." Tr. 25. The ALJ also noted that Johnson's Individualized Education Plan did not address self-care deficits. *Id.*

The ALJ properly rejected Ms. Harrison's testimony for the reasons discussed above. Further, Ms. Harrison's report that she would remind her teenage son to shower, and helped him select the right size clothing while shopping, does not establish that Johnson is limited in caring for himself as described by the regulations. While the ALJ cited Johnson's report of his future plans (Tr. 219), the record does not show that physicians or school officials noted deficits in Johnson's ability

to perform self care.  This record, in totality, supports the ALJ's finding that Johnson was not "markedly" restricted in performing self care.

### 6.    Health and physical well-being

Finally, the Commissioner's step three functionality analysis for children considers "the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on your functioning that we did not consider" in assessing a claimants ability to manipulate and move objects.  20 C.F.R. § 416.926a(l) (internal citation omitted).  This includes waxing and waning symptoms, 20 C.F.R. § 416.926a(l)(1), (3), and medication side effects.  20 C.F.R. § 416.926a(l)(2).  Evaluation may also address generalized symptoms, such as fatigue.  SSR 09-8p, "Title XVI: Determining Childhood Disability - the Functional Equivalence Domain of 'Health and Physical Well-Being,'" *available at* 2009 WL 396030 at *4.

The ALJ concluded that Johnson has "less than marked" limitations in health and physical well-being.  Tr. 25.  He discussed Dr. Pohowalla's February 27, 2007, note stating that Johnson should not stay home alone, and found it contradicted by Dr. Pohowalla's February 13, 2008, statement that Johnson "seems to function fairly well," and that his seizures were "under excellent control" with medication.  Tr. 25 (citing Tr. 258, 382).  The ALJ also gave Disability Determination Services' reviewing physicians' evaluations "significant weight" "as they are consistent with the other medical evidence."  *Id.*  Here the ALJ specifically noted that reviewing physician Shannon Eder, M.D., found Johnson's condition well controlled when he takes his medication, and that reviewing physician Martin Lahr, M.D., noted that Johnson's in-class difficulties were due in part to his "being overly social."  *Id.*

Johnson now asserts that Dr. Pohowalla's February 13, 2008, statement is contradicted by Dr. Pohowalla's December 12, 2007, attorney questionnaire. Pl.'s Opening Br. 23. Johnson cites a direct quotation by Dr. Pohowalla that reads, in entirety:

> At least 9 seizures reported over the last year. This frequent for 6 months or more. Don't know if seizures represent a type particularly difficult to control, and because of this, control maybe difficult over 6 months. May need to add a second medication regime if seizures do not come under control. Pl.'s Opening Br. 23.

Johnson misquotes the record. The record shows that Johnson's attorney questionnaire stated, "In your professional opinion, do the seizures represent a type particularly difficult to control, and because of this, control may be difficult over the next 6 months?[sic]" Tr. 369. Dr. Pohowalla circled "Don't know" and wrote, "may need to add a second medication to his regime if seizures don't come under control." *Id.* Elsewhere on the form, Dr. Pohowalla wrote that Johnson "forgets to take a dose occasionally which sometimes triggers seizures." *Id.* This evidence does not establish that Dr. Pohowalla believed that Johnson's seizures were in fact "particularly difficult to control," or that Dr. Pohowalla's opinion in turn supports a finding that Johnson has "marked" limitations in his health and well being described under 20 C.F.R. § 416.926a(l).

Johnson also cites his special education records, arguing that Johnson's special education team "recognizes that [his] seizure disorder significantly impacts his ability to assess his educational opportunities in the general setting in that when [he] has a seizure he becomes very tired and cannot function in a school setting for a period of time. [His] seizure disorder has an adverse impact on his developmental progress," as indicated in his standardized testing scores and classroom reports. Pl.'s Opening Br. 23.

19 - FINDINGS AND RECOMMENDATION

As noted, Johnson's special education records consistently show that Johnson was entitled to special education because of his seizure disorder. Tr. 220-21, 262. However, they do not show that Johnson missed a significant amount of school due to his seizure disorder or any associated fatigue: the limited attendance records in the record before this court show that Johnson missed a total of 12 school days in 2006-07 as a high school freshman (Tr. 116, 159, 164, 165), 10.5 days as a sophomore, and 25 days his junior year. Tr. 221. Though the record indicates that Johnson missed school due to seizures (Tr. 221), this court cannot now determine if these absences correlated with seizure activity. Further, no report indicates that the seizure disorder was in fact responsible for Johnson's low tests scores and classroom progress. Instead, the record repeatedly shows that Johnson's ninth- and tenth-grade teachers commented in 2006 and 2007 that his academic performance was impeded by his "attitude" (Tr. 121-22) and in-class social interactions with friends. Tr. 121-22, 162. Johnson therefore fails to show that his special education records establish that his seizure disorder caused "marked" limitation in the Commissioner's "health and physical well-being" domain. The ALJ's findings should therefore be affirmed.

## CONCLUSION

In conclusion, the ALJ's finding that Johnson was not disabled under the Commissioner's regulations should be affirmed. The ALJ's decision is based upon the record and the correct legal standards should therefore be AFFIRMED. A final judgment should be prepared, and judgment should be entered.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any,

20 - FINDINGS AND RECOMMENDATION

are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

IT IS SO ORDERED.

Dated this 2nd day of April, 2012.

Paul Papak
United States Magistrate Judge

21 - FINDINGS AND RECOMMENDATION